## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**MARY KATHERINE DAY-PETRANO,**

      **Plaintiff,**

**vs.**                                        **Case No. 1:12cv97-MP/CAS**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

_____/

### THIRD REPORT AND RECOMMENDATION

      This case is before the undersigned pursuant to an Order entered by Senior United States District Judge Maurice M. Paul.   Doc. 73.   Judge Paul considered and adopted the Second Report and Recommendation, doc. 67, which recommended that the Acting Commissioner's (Commissioner) motion to dismiss, doc. 61, Plaintiff's appeal from an Administrative Law Judge's (ALJ) dismissal of Plaintiff's request for hearing, be denied. Doc. 73 at 1 and 12.   Judge Paul also required the Commissioner, on remand, to file a response "to the issue of whether the ALJ erred in dismissing Plaintiff's case for failure to appear at the hearing.   *Id.* at 12.   On December 19, 2014, the Commissioner filed a response.   Doc. 74.   No response was filed by Plaintiff despite given an opportunity to do so, doc. 77 at 4.[1]

---

[1]   On February 2, 2015, Plaintiff filed a pro se motion to extend the time for filing a response to the Commissioner's response, doc. 74, in order to hire counsel, doc. 78.   By separate Order, this motion is denied.   Doc. 79.

It is respectfully recommended that the decision of the Commissioner be reversed and this case remanded to the Commissioner for a hearing on the merits.

**Procedural History of Plaintiff's Cases before the Social Security Administration**

This case has a long history that is recounted in Judge's Paul's Order, doc. 73, and the Second Report and Recommendation.   Doc. 67.

### Case One

ALJ Christopher Messina wrote two seminal decisions.   The first decision was entered on March 10, 2010, doc. 24 at 44-53, when the ALJ determined Plaintiff was disabled since January 23, 2003.   The ALJ gave notice to Plaintiff of his "fully favorable" decision regarding Plaintiff's Title XVI Supplemental Security Income (SSI) applications, *id.* at 41-43.   The second decision, an Order of Dismissal, was entered on June 24, 2010, by ALJ Messina, dismissing Plaintiff's request for hearing of her Title II period of disability and Disability Insurance Benefits (DIB) applications.   *Id.* at 64-65.

On March 10, 2010, ALJ Messina provided an historical perspective of Plaintiff's claims:

> For a historical perspective, the claimant filed her first Title XVI application for supplemental security income on July 7, 1993.   She alleged a disability beginning July 1, 1993.   The claim was denied initially on February 2, 1994.
>
> The claimant filed her second Title XVI application for supplemental security income on June 4, 1996.   She alleged a disability beginning June 1, 1996.   The claim was ultimately awarded, and the claimant remained in pay status during the months of June 1996 through December 1997.   Effective January 1998, the Social Security Administration determined that the claimant had excess income that precluded eligibility for Title XVI supplemental security income.   Eligibility for these payments later terminated effective January 2000.
>
> The claimant protectively filed a Title II application for a period of disability and disability insurance benefits on January 23, 2003.   She also filed her third Title

XVI application for supplemental security income on January 23, 2003.   The claimant alleged a disability beginning December 18, 2002.   The Title II claim was denied initially on April 3, 2003.   The Social Security Administration determined that the claimant was not insured for Title II benefits as of the alleged disability onset date.   The Title XVI claim was denied initially on July 10, 2003 for the claimant's failure to cooperate.   Specifically, remarks on the claimant's Title XVI record suggest the claimant refused to submit information on her income.

The claimant protectively filed a second Title II application for a period of disability and disability insurance benefits on July 27, 2004.   She also filed her fourth Title XVI application on July 27, 2004.   The claimant alleged a disability beginning January 1, 2001.   The Title II claim was denied initially on October 14, 2004.   The Social Security Administration again determined that the claimant was not insured for Title II benefits as of the alleged disability onset date.   The Title XVI claim was denied initially on December 3, 2004 for, yet again, the claimant's failure to cooperate.   Specifically, the claimant failed to submit to a consultative examination.

On December 16, 2004, the claimant filed a 19 page memorandum with the Social Security Administration's Office of Central Operations in Baltimore, Maryland.   In this lengthy appeal, the claimant offered various arguments regarding her denial of disability.   She included many attached "Exhibits."   A reconsideration determination on the Title II denial was offered on September 11, 2007.   The claimant proceeded to file a request for hearing on this issue on November 13, 2007.   On November 7, 2008, an adverse reconsideration determination was made on the Title XVI claim for supplemental security income. This has been escalated to the hearing level.

The claimant's file has now been assigned to me.   *Upon reviewing the evidence, I am convinced that a fully favorable, on-the-record decision can be reached on the claimant's Title XVI application for supplemental security income.   Moreover, the claimant previously filed a Title XVI application on January 23, 2003.   The previous adverse determination on this application is reopened and revised under 20 CFR 416.1488.*

*As to the matters involving the claimant's Title II claim, my initial review of the file suggests that a fully favorable, on-the-record decision cannot be issued.   The claimant will be advised shortly of the date, time, and place for her requested hearing regarding this matter.*

Doc. 24 at 44-45; doc 74-4 at 46-47 (emphasis added).   ALJ Messina determined:

1.   Plaintiff "has not engaged in substantial gainful activity since January 23, 2003, the date the prior application for supplemental security income was filed."   Doc. 24 at 48.

2.   Plaintiff had several "severe impairments: history of left shoulder impingement syndrome/frozen left shoulder; cervical, thoracic, and lumbosacral strains/sprains, with recent evidence of a C5-C6 disc protrusion; headaches; bilateral tempromandibular joint disorder; obstructive sleep apnea; diagnoses of major depression, with psychotic features, versus psychotic disorder (not otherwise specified), versus personality disorder, with strong paranoid dependent and borderline features, versus psychotic disorder, with prominent delusional and schizophreniform features; obsessive-compulsive disorder; posttraumatic brain injury syndrome; frontal network syndrome; and, temporal lobe syndrome (20 CFR 416.920(c))."   Doc. 24 at 48.

3.   "The severity of [Plaintiff's] impairments meets the criteria of sections 12.06 [Anxiety Related Disorders] and 12.08 [Personality Disorders] of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d) and 416.925)."   Doc. 24 at 52.

ALJ Messina concluded that Plaintiff

[h]as been disabled since January 23, 2003, the date the prior application for supplemental security income was filed.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments and, if the claimant is eligible, the amount and the months for which payment will be made.

Doc. 24 at 53; *see* doc. 74-4 at 55.

On March 10, 2010, by the Notice of Decision, Plaintiff was advised that the ALJ's decision was "fully favorable."[2]   Plaintiff was also advised of her right to appeal the ALJ's decision to the Appeals Council.   Doc. 24 at 41-43.   According to the Commissioner, Plaintiff "did not receive SSI benefits because she refused to provide proof of her resources to the agency, which is required before SSI can be awarded."   Doc. 74 at 1 n.1 (citations omitted); doc. 74-4 at 4 (Declaration of Patrick J. Herbst).

---

[2]   The denial of benefits at issue in this case concerns Plaintiff's request for a period of disability and DIB which was denied by the Order of Dismissal on June 24, 2010. Doc. 24 at 1, 64-65; *see also* doc. 61-2 at 4; doc. 74-4 at 8-9.

**Case Two**

On September 12, 2008, Plaintiff requested a hearing before an ALJ regarding

Plaintiff's claim for a period of disability and DIB.   Doc. 24 at 64.   Plaintiff was

unrepresented.   *Id.*   A hearing was set for June 11, 2010, before ALJ Messina.   *Id.* at

54.   On June 24, 2010, the ALJ set forth the procedural history of the case, doc. 24 at

64-65, and dismissed Plaintiff's request for hearing, finding that Plaintiff had failed to

demonstrate good cause for her failure to appear at the time and place of the hearing.

Doc. 24 at 61-65.   The ALJ's record findings are set forth.

> This case is before the undersigned on a request for hearing dated September 12, 2008.   The claimant is unrepresented in this matter.
>
> An Administrative Law Judge may dismiss a request for hearing if neither the claimant nor the person designated to act as the claimant's representative appears at the time and place set for the hearing; if the claimant has been notified before the time set for the hearing that her request for hearing may be dismissed without further notice if she did not appear at the time and place of hearing; and if good cause has not been found by the Administrative Law Judge for the claimant's failure to appear (20 CFR 404.957(b)(1)(i).   *In determining good cause, the Administrative Law Judge will consider any physical, mental, education, or linguistic limitations (including any lack of facility with the English language) the claimant may have (20 CFR 404.957(b)(2)).*
>
> A Notice of Hearing was mailed to the claimant on March 19, 2010 to the claimant's last known address.   The Notice of Hearing contained an explanation of the procedures for requesting a change in the time and place of the claimant's hearing and a reminder that failing to appear at her scheduled hearing without good cause could result in dismissal of the claimant's request for hearing.   The Notice of Hearing also asked the claimant to return the enclosed Acknowledgement of Receipt (Notice of Hearing) form to let the Hearing Office know that she had received the notice.   The envelope came back from the United States Post Office (USPO) as undeliverable with no forwarding address. (Exhibit B18).   The Tampa ODAR then attempted to get an updated mailing address from the USPO, as well as searching through her case file for an alternative address.   A P.O. Box address was discovered in the case file, a failed attempt was made to mail the notice to the P.O. Box on March 19, 2010.   It was returned again as undeliverable.   (Exhibit B18).   On April 14, 2010, the Tampa ODAR attempted to contact the claimant by telephone to retrieve an updated mailing address.   The claimant refused to verify

her address on the telephone, and requested that we e-mail her the request. (Exhibit B20).   Later that same day, the undersigned personally e-mailed the claimant requesting an updated address.   The e-mail read "Please provide me your Current mailing address.   We tried mailing you a notice of hearing, but it was returned to us." (Exhibit B21).   The claimant responded to my e-mail citing numerous regulations and discussing various medical evidence that she had submitted for her case. However, she again failed to provide me with an updated mailing address. (Exhibit B22)

An additional address was discovered (1906 Westley St.) and a third Notice of Hearing was mailed to the claimant on April 16, 2010.   It also was returned as undeliverable. (Exhibit B27).   A last attempt was made to send the Notice to yet another address (1404 County Trails Dr.) by certified mail on May 3, 2010.   The certified receipt was signed and returned to the Tampa ODAR indicating the Notice was received on May 5, 2010.   The Notice of Hearing indicated that the claimant's hearing was to be held on June 11, 2010.   The Notice of Hearing contained an explanation of the procedures for requesting a change in the time and place of the claimant's hearing and a reminder that failing to appear at her scheduled hearing without good cause could result in dismissal of the claimant's request for hearing. (Exhibit B30).

The claimant did not appear at the hearing, nor did she contact the hearing office prior to the date of her hearing requesting a postponement.

The undersigned has considered the factors set forth in 20 CFR 404.957(b)(2) and finds that there is no good cause for the claimant's failure to appear at the time and place of hearing.

Accordingly, the request for hearing dated September 12, 2008 is dismissed and the determination dated September 11, 2007 remains in effect.

Doc. 24 at 64-65; *see doc.* 61-2 at 4-5; doc. 74-4 at 8-9.

Plaintiff was advised of her right to file an appeal with the Appeals Council.   Doc.

24 at 61-63; doc. 74-4 at 5-7.   On August 26, 2010, Plaintiff sought review.

Doc. 24 at 67-68; doc. 74-4 at 24-39.   Plaintiff's request for review is lengthy.

Doc. 74-4 at 24-39.   Plaintiff argued, in part, that the ALJ's dismissal "was deliberately

and intentionally not provided in accessible formats in violation of *Alexander v. Choate*,

469 U.S. 287 (1985) (fair treatment and meaningful access) . . . ."   Doc. 74-4 at 24.   In

part, Plaintiff suggested that the ALJ overlooked her longstanding autism and that she "can only effectively communicate via internet computer modes, and not in a conventional hearing in an inaccessible building . . . ."   *Id.* at 24-31.   Plaintiff further argued that the Social Security Administration did not "provide [[her] accessible autism formats [she] could see to read for meaningful access [and she] only managed to get a scanned internet computer version within the last 7-10 days."   *Id.* at 38.

On March 9, 2012, the Appeals Council denied her request for review finding no reason to review the ALJ's dismissal.   Doc. 24 at 66-68; doc. 74-4 at 40-42.   The Appeals Council noted that it had considered information provided by Plaintiff, including Plaintiff's allegation the ALJ "engaged in misconduct and discriminated against" her and additional evidence from Michael Hoffman, M.D.   *Id.*[3]   On May 8, 2012, Plaintiff filed a Complaint in this Court seeking review of ALJ Messina's June 24, 2010, Order of Dismissal.   Doc. 1.

### **Plaintiff's Third Amended Complaint**

After numerous motions and responses and other documents were filed and the entry of several orders, *see* docs. 1-23, on December 21, 2012, Plaintiff, proceeding pro se, submitted a third amended complaint (complaint), doc. 24, naming the Commissioner of Social Security as the only Defendant.   Plaintiff alleged that on an unspecified date, the "Social Security Administration denied Plaintiff's application for disability insurance benefits (SSDI) and Supplemental Security Income (SSI) benefits."   Doc. 24 at 2. Plaintiff alleges (regarding case one, above) that after a hearing was held without Plaintiff

---

[3]   The Notice from the Appeals Council which denied Plaintiff's "request for review of the Administrative Law Judge's dismissal dated June 24, 2010," was also attached as Exhibit E to Plaintiff's complaint.   Doc. 24 at 66-68.

and "without her full participation," the ALJ granted Plaintiff's claim on March 10, 2010, doc. 24 at 41-53.   *Id.* at 3.   Plaintiff objected on the basis that her Autism was "mis-labeled a 'psychosis' and requested that the ALJ again grant her disability benefits, but "change the stated reasons to accurately reflect Plaintiff's actual disabilities [Autism]." Doc. 24 at 3-4.

Plaintiff complains that the ALJ "sent a known inaccessible paper print black and white format Notice of Hearing on May 3, 2010[,] scheduling a hearing on June 11, 2010, after the Mar. 10, 2010[,] decision granted Plaintiff's claim had already occurred . . . ." Doc. 24 at 4.[4]   Plaintiff alleged "[t]he hearing notice was not sent via Internet shade of synesthesia purple to allow Plaintiff to know there was one or even that such a notice existed . . . ."   *Id.* at 5.   ALJ Messina entered an Order of Dismissal on June 24, 2010, denying her claim and dismissing the hearing.[5]   *Id.* at 5.   After being informed of the dismissal, Plaintiff requested review by the Appeals Council on August 26, 2010, of "the June 24, 2010, dismissal, and all previous Social Security decisions of my lifetime . . . ." *Id.* at 5-6; *see also* doc. 61-5.   The Appeals Council "denied the request for review" although Plaintiff contends she "never received this letter because it was not in an accessible format . . . ."[6]   *Id.* at 5-6.   As relief, Plaintiff requested that the Commissioner

---

[4]   Plaintiff attached the Notice of Hearing to the complaint.   Doc. 24 at 54.

[5]   Plaintiff alleged in the complaint that the ALJ's decision was likewise "never served on Plaintiff, because it was not in an accessible format 'meaningfully calculated' to be received by her specific to her individualized disabilities."   Doc. 24 at 3.   Plaintiff further alleged that "another person informed" her of the "denial decision" and requested on Plaintiff's behalf that "ALL written communications both sent and received, as well as all hearings and other spoken communications, to be provided by Social Security Administration via Internet in Plaintiff's synesthete shade of purple."   *Id.*

[6]   Similarly, Plaintiff complains that she "never received" the letter of dismissal from

be required to submit the administrative record, including evidence that "would have [been] gathered 'but for' its failure to be specifically prepared to support and assist persons with severe Autism and brain injuries" and "grant Plaintiff the maximum monthly disability insurance benefits (SSDI) and/or Supplemental Security Income (SSI), retroactive to date of initial Autism disability, or in the alternative remand the case to the Commissioner of Social Security for reconsideration of such evidence" and require the Commissioner to provide Plaintiff with other relief such as "reasonable accommodation, effective communication, alternative formats, and meaningful access . . . ." *Id.* at 9-10. Service of this version of Plaintiff's complaint was directed.   Doc. 26.

### The Commissioner's Motion to Remand

On March 8, 2013, the Commissioner filed a motion requesting the Court to remand the case because Plaintiff's filed could not be located.   Doc. 32.   On March 22, 2013, Plaintiff filed a response.   Doc. 36.

On April 2, 2013, a Report and Recommendation was entered, doc. 37, recommending that the Commissioner's motion to remand be granted pursuant to 42 U.S.C. § 405(g) because Plaintiff's case file could not be located.   *See* docs. 32-33, 61-1 at 3.    The pro se Plaintiff filed a notice of appeal, doc. 38, and a motion seeking leave to proceed in forma pauperis on appeal, doc. 39.   By Court Order entered on May 7, 2013, ruling on the motion for in forma pauperis status was deferred because it was insufficient,

the Appeals Counsel either "because it was not in an accessible format 'meaningfully calculated' to be received by her specific to her individualized disabilities, but another person discovered it had been dumped in a pile of paper print mail by the post man and it wound up in Plaintiff's possession as an object she could touch but not see to read on or about May 30, 2012 . . . ."   Doc. 24 at 6.

and Plaintiff advised that a report and recommendation is not a final and appealable order.   Doc. 44.   On May 6, 2013, Senior United States District Judge Maurice Paul entered an Order adopting the Report and Recommendation.   Doc. 40.   Subsequently, Judge Paul vacated that Order because Plaintiff's notice of appeal to the Eleventh Circuit divested this Court of jurisdiction over the matters at issue in the appeal.   Doc. 46; *see* doc. 50.   The Eleventh Circuit Court of Appeals was requested to remand this case to the Court "so that this matter may be resolved in the most expedient manner."   Doc. 46.   On June 10, 2013, the Eleventh Circuit dismissed Plaintiff's appeal for lack of jurisdiction, doc. 48, and Judge Paul adopted the Report and Recommendation and remanded the case to the Commissioner of Social Security pursuant to sentence six of 42 U.S.C. § 405(g).   Doc. 50.

Plaintiff then filed another notice of appeal, doc. 51, and on October 3, 2013, the Eleventh Circuit again dismissed Plaintiff's appeal for lack of jurisdiction.   Doc. 60.   The Court explained that an "order remanding the action to the Commissioner of Social Security pursuant to sentence six of 42 U.S.C. § 405(g) is not final and appealable."   *Id.*

### The Commissioner's Motion to Dismiss, doc. 61

On November 21, 2013, and subsequent to the dismissal of Plaintiff's appeal, the Commissioner filed a motion to dismiss.   Doc. 61.   The Commissioner contended that after filing the motion for a sentence six remand under § 405(g), "Plaintiff's case file has been located."   Doc. 61-1 at 4.   The Commissioner asserted that review of Plaintiff's "case file shows that she does not have appeal rights to this Court . . . ."   Doc. 61-1 at 4. The Commissioner contended that pursuant to 42 U.S.C. § 405(h), Plaintiff had no right to appeal because Plaintiff did not attend her hearing, despite having received notice and,

thus, Plaintiff "failed to obtain a final decision of the Commissioner." *Id.* at 5-6.   Because a final decision was not made after a hearing, the Commissioner argued this case must be dismissed for lack of subject matter jurisdiction.   Doc. 61 at 1.   Plaintiff filed a response and an affidavit, docs. 62-63, and on January 13, 2014, the Second Report and Recommendation was filed recommending denial of the Commissioner's motion to dismiss.   Doc. 67.

As noted above, on December 2, 2014, Judge Paul entered an Order and adopted the Second Report and Recommendation, denied the motion to dismiss, and remanded the case to the undersigned to determine whether the ALJ erred in dismissing Plaintiff's case for her failure to appear at the hearing.   Doc. 73 at 12.

**The ALJ's findings regarding dismissal of case one, doc. 24 at 61-65, doc. 74-4 at 5-9**

The Commissioner attached to the motion to dismiss the Order of Dismissal, dated June 24, 2010, from ALJ Messina.   Doc. 61-2; *see* doc. 24 at 64-65; *see also supra* at 5-6 (ALJ's findings).   As noted above, the ALJ found there was "no good cause" for Plaintiff's failure to appear at the hearing, and dismissed Plaintiff's request for a hearing, which meant that the prior September 11, 2007, determination on her claim for disability and DIB remained in effect.   *Id.*

**Plaintiff's Response, doc. 62**

On December 9, 2013, Plaintiff responded to the Commissioner's motion to dismiss.   Doc. 62.[7]   Plaintiff took issue with the Commissioner's assertion that the

---

[7]   It has already been recounted that this response was filed "by and through Next Friend David F. Petrano," who is Plaintiff's husband, although no motion had been filed for Next Friend representation.   This case was not initiated for Plaintiff by a Next Friend,

Notice of Hearing was signed for and, thus, received by Plaintiff.   Doc. 62 at 18.   Plaintiff complained that the Defendants did not serve two copies of the Notice on her husband and care-taker, David Petrano, as required by Florida law.   Plaintiff asserted that "[t]he incapacitated / incompetent Plaintiff did not receive any notice of the hearing."   Doc. 62 at 19.   Plaintiff contended "this Court is not barred from jurisdiction under 42 U.S.C. Sec. 405(g) or (h)" and requests the motion to dismiss be denied.   *Id.* at 20.

Although noting contrary case law, Judge Paul determined that this Court has jurisdiction to consider Plaintiff's appeal and required the Commissioner "to file a response to the issue of whether the ALJ erred in dismissing Plaintiff's case for failure to appear at the hearing."   Doc. 73 at 12.

### The Commissioner's Response to Court Order

On December 19, 2014, the Commissioner filed a response and attachments to the Court's Order denying the Commissioner's motion to dismiss, doc. 73.   Docs. 74 and 74-1 - 74-4.   The Commissioner included a Declaration of Patrick J. Herbst who provided a summary of the procedural history of the case and further advised, in part, that he was not aware that Plaintiff ever told the agency she could only read a certain shade of purple. Doc. 74-4 at 4.

---

but was brought by Plaintiff pro se.   Moreover, at that time, Plaintiff had not filed a motion requesting the appointment of counsel or asserting that she is in need of Next Friend representation.   Notwithstanding the assertion that the response is from "Plaintiff, pro se, by and through Next Friend David F. Petrano," Plaintiff signed the response herself, doc. 62 at 25, and the arguments presented therein were fully considered and deemed to have been filed by Plaintiff pro se.   Ultimately, on January 9, 2015, Mr. Petrano was denied Next Friend status.   Doc. 77.

## Analysis

The issues to be resolved are whether the ALJ's Order of Dismissal is supported by substantial evidence and whether the ALJ applied the correct legal standards.   *See* Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988).

As noted above, on March 10, 2010, ALJ Messina entered a "fully favorable" decision regarding Plaintiff's Title XVI SSI claim.   Doc. 24 at 41-53; doc. 74-4 at 43-55. (The ALJ reopened and revised the previous adverse determination.   Doc. 24 at 45; doc. 74-4 at 47.)   Importantly, the ALJ reviewed the evidence and was "convinced that a fully favorable, on-the-record decision [could] be reached on the claimant's Title XVI application for [SSI]."   *Id.*   The ALJ did not cite to any authority for his "on-the-record decision," although there is such authority, *see, e.g.*, 20 C.F.R § 416.1448, but he did cite to 20 C. F. R. § 416.1488 when he determined to reopen the previous adverse determination and to revise that determination.   Doc. 24 at 45; doc. 74-4 at 47.

In reaching his favorable determination, the ALJ found that Plaintiff had several severe impairments, including "severe mental health impairments, though there is some equivocation as to what the claimant definitely has."   Doc. 24 at 48; doc. 74-4 at 50.   The ALJ also determined that Plaintiff's impairments meet the criteria of sections 12.06 and 12.08 of the Listing of Impairments, 20 C. F. R. Part 404, Subpart P, Appendix 1.   Doc. 24 at 52; doc. 74-4 at 54.   The ALJ concluded that

> [t]he "Paragraph B" criteria of each section are satisfied because the claimant's impairments cause: marked restriction in activities of daily living; extreme difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and, no episodes of decompensation, each of extended duration.

*Id.*   The ALJ found that Plaintiff was disabled and entitled to SSI benefits.   Doc. 24 at 52-53; doc. 74-4 at 54-55.

In his March 10, 2010, decision, the ALJ stated his "initial review of the file suggests that a fully favorable, on-the-record decision cannot be issued" regarding Plaintiff's Title II DIB claim and that Plaintiff "will be advised shortly of the date, time, and place for her requested hearing regarding this matter."   Doc. 24 at 45; doc. 74-4 at 47. The procedural history of this case is recited above.   *See supra* at 2-3.

On June 24, 2010, ALJ Messina dismissed Plaintiff's request for hearing dated September 12, 2008, regarding the agency's September 11, 2007, determination to deny Plaintiff Title II DIB benefits.   Doc. 24 at 65; doc. 74-4 at 9.

The ALJ stated that he considered the factors set forth in 20 C.F.R. 404.957(b)(2) and found there was "no good cause for the claimant's failure to appear at the time and place of hearing."   Doc. 24 at 64-65; doc. 74-4 at 8-9; *see supra* at 5-6 (ALJ's findings).   The ALJ referred verbatim to 20 C.F.R. § 404.957(b)(2) that states:

> (2) In determining good cause or good reason under this paragraph, we will consider any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you may have.[8]

---

[8]   In her complaint, Plaintiff refers to this section and states:

> K.   The ALJ erred in dismissing Plaintiff s claim because he failed to consider specifically in the context of severe Autism, brain injury, and other co-occurring and related disabilities, the "physical, mental, and linguistic limitations the claimant, here Plaintiff, may have contrary to 20 C.F.R. Sec. 404.957(b)(2) - including that people with severe Autism may not be able to navigate the process and may have severe social impairments and social anxiety, and to serve the Notice on her by personal delivery signed receipt mail and simultaneously accessible email formats.

The ALJ provided a thorough account of the procedural history of this matter, which includes numerous notifications sent to Plaintiff.   Doc. 24 at 64-65; doc. 74-4 at 8-9; *see supra* at 5-6.   The ALJ noted an April 14, 2010, e-mail exchange between him and Plaintiff with Plaintiff responded "citing numerous regulations and discussing various *medical evidence* that she had submitted for her case," but also noted that Plaintiff "again failed to provide [him] with an updated mailing address.   (Exhibit B22)."   *Id.* (emphasis added).

The ALJ referred to medical evidence provided by Plaintiff, doc. 24 at 65, doc. 74-4 at 9, but did not discuss the nature of this evidence and whether it may have impacted Plaintiff's ability to participate in the proceeding.   The ALJ was aware of Plaintiff's severe impairments and noted them in his earlier March 10, 2010, decision.   Doc. 24 at 48; doc. 74-4 at 50.   The ALJ performed this analysis at step 2 of the sequential evaluation process.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   At step 3, the ALJ also noted, as part of his consideration of the "paragraph B" criteria of sections 12.06 and 12.08, that Plaintiff had marked restriction in activities in daily living and extreme difficulties in maintaining social functioning, although mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration.   Doc. 24 at 52; doc. 74-4 at 54.[9]   The ALJ found Plaintiff disabled at step 3.   *Id.*; *see* 20 C.F.R.

---

Doc. 24 at 8-9.
     [9]   The Listing of Impairments "describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a).

§§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

These findings do not necessarily mean that Plaintiff should have been relieved of her obligation to attend the scheduled hearing.   They do indicate, however, that the ALJ, having been more than acquainted with Plaintiff's proven impairments, should have, at the very least, considered them when he dismissed Plaintiff's request for hearing.   On March 10, 2010, the ALJ specifically noted that Plaintiff and her husband

> allege disability due to autism, specific learning disability in speaking, writing, and mathematics, the residuals of a "significant" brain injury, injuries to the cervical spine, hearing and visual deficiencies, etc.   The claimant has indicated that she can only communicate in written form with the assistance of speech-to-text computerized software, and has alleged needing frequent rest breaks secondary to constant and extreme pain and fatigue.

Doc. 24 at 48; doc. 74-4 at 50.   The ALJ noted that "[w]hile the [Plaintiff's] physical impairments are severe, her mental impairments are more relevant for purposes of this decision and a finding of disability."   Doc. 24 at 50; doc. 74-4 at 52.   The ALJ summarized medical evidence relating to Plaintiff's mental impairments, including the following episode:

> Recently, in November 2004, an attempt was made to refer the claimant for a consultative psychological examination with David B. Kazar, Ph.D.   On November 18, 2004, the claimant apparently contacted Dr. Kazar's office.   The claimant "made requests of the office staff for information which they did not have available and, in some cases, could not understand what was being requested." Soon thereafter, Dr. Kazar got on the phone with the claimant.   Dr. Kazar indicated that the claimant began a "tirade" indicating that she was an attorney and that she needed the doctor's license number and credentials.   The doctor indicated that the claimant spoke in a "virtually uninterruptible fashion."

Doc. 24 at 51; doc. 74-4 at 53.   Given his "on-the-record" review of the medical evidence in case one, the ALJ concluded that Plaintiff "has severe mental health impairments, though there is some equivocation as to what the claimant definitely has."   *Id.*   The

ALJ's considered Plaintiff's claim based solely on the record evidence.   Thus, Plaintiff did not appear for any hearing on her SSI claim.   Likewise, the ALJ did not have the benefit of judging Plaintiff's demeanor, although the referenced medical records provided significant insight for the ALJ.

20 C.F.R. § 404.957(b)(2) requires the ALJ to consider, in part, Plaintiff's mental limitations when determining good cause or good reasons for Plaintiff not appearing at the hearing.   The ALJ erred when he found Plaintiff did not establish good cause or good reasons for her failure to appear for the noticed hearing.   Simply put, the ALJ did not expressly consider the effect of her mental impairments (previously found) on her ability to understand the nature of the proceeding and her ability to appear at the hearing.   *See generally* Elchediak v. Heckler, 750 F.2d 892, 894 (11th Cir. 1985); *see also* Canales v. Sullivan, 936 F.2d 755, 758-59 (2d Cir. 1991).   The ALJ did not apply the correct legal standards and his decision is not supported by substantial evidence.

The most appropriate remedy under the unique circumstances of this case is to reverse and remand the case to the Commissioner for the assignment of an Administrative Law Judge to make a determination, after notice and consideration of such evidence as the parties may submit at a hearing, whether Plaintiff's Title II applications for a period of disability and DIB should be approved, *see* Doc. 24 at 44-45; doc. 74-4 at 46-47.   *See* Pizarro v. Comm'r of Soc. Sec., Case No. 6:12-cv-801-Orl-37DAB, 2013 U.S. Dist. LEXIS 31372, at *28 (M.D. Fla. Jan. 24, 2013), *adopted*, 2013 U.S. Dist LEXIS 32367, at *11 (M.D. Fla. Mar. 7, 2013).[10]

---

[10]   The Commissioner stated that if this Court disagreed with her motion to dismiss, "the appropriate remedy is to remand for a hearing because preparation of a

Conclusion

In light of the foregoing, it is respectfully **RECOMMENDED** that this case be

**REVERSED AND REMANDED** to the Commissioner to assign an Administrative Law

Judge to make a determination on the merits of whether Plaintiff's Title II applications for

a period of disability and DIB should be approved, *see* doc. 24 at 44-45; doc. 74-4 at

46-47.

**IN CHAMBERS** at Tallahassee, Florida, on February 2, 2015.


S/   Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.   A party may respond to another party's objections within 14 days after being served with a copy thereof.   Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

transcript will not assist in the adjudication of this case because there is no ALJ decision on the issue of disability."   Doc. 74 at 12.